**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:05-CR-0085** |
| : | |
| **v.** : | **(Judge Conner)** |
| : | |
| **CLARENCE LOUIS CRUDUP** : | |

**MEMORANDUM**

Presently before the court are defendant's motions (Docs. 20, 21) for a line-up and to suppress the identification of a firearm. Following a hearing, and for the reasons that follow, the motions will be denied in part and granted in part.

This case involves a bank robbery that took place on October 14, 2004, at the Grove Community Federal Credit Union in Greencastle, Pennsylvania. A black male with a semi-automatic handgun entered the bank, jumped over the counter, and physically restrained several bank employees before fleeing with approximately $62,000. The Pennsylvania State Police ("PSP") were subsequently provided information that the defendant had committed the robbery.

Through their investigation PSP troopers learned that, almost two weeks after the robbery, defendant had been arrested in Hagerstown, Maryland. At the request of PSP Trooper David Peck ("Trooper Peck"), Maryland authorities provided a photographic array of six black males, one of whom was defendant. Maryland authorities also provided photographs of two handguns that were found in a vehicle that defendant was driving at the time of his arrest. The photographs were shown by Trooper Peck to four bank employees who were present during the robbery. Two employees identified defendant as the individual who robbed the

bank, and three employees identified one of the handguns as the weapon used in the robbery.  (See Docs. 26, 27; Doc. 32 at 1-9, 13-14, 17).[1]

Defendant argues that only two of the four bank employee witnesses selected defendant's picture from the photo array, and that defendant was unable to observe the manner in which the photographs were shown to the witnesses, or to assess the witnesses' credibility.  Defendant contends that, because the witnesses's first live identification of defendant will occur at trial, it will merely be a "show-up" and not a true identification.  He requests an order directing an out-of-court line-up.  Defendant also moves for suppression of the witnesses' identification of the firearm because, he contends, the photographs and manner of presentation improperly suggested that the identified firearm was the instrument of the crime.

That two of the four employees were unable to identify the defendant goes to the weight the fact-finder may afford the witnesses' testimony, and does not raise constitutional concerns.  See United States v. Flenory, 619 F.2d 301, 304 (3d Cir. 1980).  Because the reliability of witness identification is a matter for the finder of fact, the court is under no obligation to conduct a line-up.  See United States v. Sebetich, 776 F.2d 412, 420 (3d Cir. 1985).  However, the Court of Appeals for the Third Circuit has "recommended" the use of court-ordered line-ups when it is

---

[1] Document thirty-two is the minute entry from the hearing held on this matter on June 1, 2005.  A transcript of the hearing has not been docketed, but is on file with the court's reporter.

necessary to ensure the accuracy and reliability of an identification.[2] Id., at 420. Hence, in deciding whether a line-up is warranted the court must review the identification procedures utilized in this matter to determine whether they are free from serious questions of accuracy or reliability.

A challenge to the legitimacy of a pretrial identification procedure implicates the Due Process Clause.  See United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003); Burkett v. Fulcomer, 951 F.2d 1431, 1448 (3d Cir. 1991).  To demonstrate a violation of due process, a defendant must establish (1) that the procedure used was "unreasonably" or "impermissibly suggestive" and (2) that this suggestiveness gave rise to a "substantial likelihood of misidentification."  United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995); Burkett, 951 F.2d at 1448; United States v. Dowling, 855 F.2d 114, 117 (3d Cir. 1988); see also Lawrence, 349 F.3d at 115.  When the procedure involves a photographic array, the court must scrutinize the size of the array, its manner of presentation, and its contents.  See Reese v. Fulcomer, 946 F.2d 247, 260 (3d Cir. 1991).  "If there is no prejudice in the manner of the presentation, the primary question is whether the suspect's picture is so different from the others that it suggests culpability."  Id.  The court must examine all of the circumstances surrounding the presentation of the array and

---

[2] The Third Circuit has also cautioned that line-ups are inappropriate when the defendant's appearance has been "significantly altered."  See Sebetich, 776 F.2d at 421 n.11.

then determine whether it was unnecessarily suggestive. Lawrence, 349 F.3d at 115.

However, even when the manner of presentation is found to be suggestive, due process is not offended if the identification possesses sufficient aspects of reliability. Emanuele, 51 F.3d at 1128; see also Burkett, 951 F.2d at 1448. To determine whether an identification is reliable the court must review the totality of the circumstances and assess facts such as "the quality of the witnesses' original opportunity to view" the suspect, the witnesses' "degree of attention," their "level of certainty" when viewing the suspect or photograph, and the length of time between the crime and the identification process. Dowling, 855 F.2d at 117; see also Emanuele, 51 F.3d at 1128.

In the matter *sub judice*, Trooper Peck testified that he has been a Pennsylvania State Police Trooper for twelve years, and was assigned as the primary investigator for the bank robbery. (Doc. 32 at 5-6, 18). The Maryland authorities provided to him a photographic array of defendant and five others, a list of the names of the individuals depicted in the array, and two photographs of the firearms found in the vehicle that defendant had been driving at the time of his arrest. (Doc. 32 at 9). Trooper Peck immediately took the photographs to the bank and asked each witnesses to accompany him individually into an office away from the other witnesses. (Doc. 32 at 9, 16-17, 35). Trooper Peck placed the photo array on a table and then asked each witness, in turn, if any of the individuals looked familiar and, if so, where the witness had seen that person. (Doc. 32 at 10). After

the witness responded, Trooper Peck put the two photographs of the firearms on the table and asked the witness if either firearm appeared similar to the one used in the robbery. (Doc. 32 at 16, 17, 43, 52-53). The witnesses were not told where or from whom the firearms were obtained. (Doc. 32 at 43). The witnesses were instructed not to discuss the process with one another, and the parties stipulated that each witness would testify that they did not discuss the photographs or the identification process among themselves. (Doc. 32 at 14, 38).

The court finds Trooper Peck's testimony forthright and credible, and there was nothing suggestive about the manner in which he presented the photographs to the witnesses. Trooper Peck assured that the witnesses were segregated and that they did not discuss the identification process. He did not ask leading or suggestive questions, name the defendant or emphasize his picture. In short, defendant has failed to demonstrate that the manner in which Trooper Peck presented the photographs was prejudicial.

Nor does the court find anything suggestive about the photo array. The original photo that was shown to the witnesses was admitted into evidence. (Doc. 32 at 10-11, 15, 36; Doc. 33). The photo array consists of one eleven inch by eight and one-half inch sheet of white paper, on which are horizontally displayed two rows of three color photographs, each photograph measuring a standard two inches by two and one-half inches. No words are on the array, but underneath each picture is a number ranging from one to six, consecutively placed from left to right. The photographs are "head shots" of six black males, and defendant is

number five.  All appear to be wearing street clothes and are in front of a white or off-white background.  All appear to be approximately the same age, and their heights and body builds are not discernible.  With the exception of individual number two, all have very dark skin.[3]  With the exception of number four, all of the individuals have thin or faint facial hair.  The defendant and numbers one, two, three and six have thin mustaches.  The defendant and numbers one, two, and three appear to also have hair on their chins and/or cheeks.

Upon review of the array, the court finds that defendant's photograph is not so different as to suggest culpability and, in fact, the individuals pictured are strikingly similar in appearance.  Because the court finds that neither the photo array nor Trooper Peck's manner of presentation were "unnecessarily suggestive," its accuracy and reliability are not called into serious doubt.  Hence, defendant's motion for a line-up will be denied.

However, the court has reservations with regard to the firearm identification process.  Like the photo array, the two firearm photos are presented on sheets of paper measuring eleven inches by eight and one-half inches.  Though both pictures appear to have been taken on the same carpet-like surface, this is where their similarities end. One photograph depicts a black, semi-automatic pistol with a black or brown handgrip.  The other depicts a silver, snub-nose revolver with a brown wood or simulated wood handgrip.  Under the due process standards

---

[3] Individual number two has only slightly lighter skin, which could be the result of the lighting in use when the picture was taken.

enunciated above, there is no question that if these photographs were of two such dissimilar people the court would be forced to determine whether sufficient aspects of reliability exist such that the identification could be admitted.  However, defendant has not cited to any case law to support the proposition that the potential for misidentification of *an instrument of crime* is sufficient to raise due process concerns.  Nor has the government cited to any caselaw that would suggest that it is not a concern.[4]   The court has been able to find only one, nonpublished opinion addressing facts similar to those *sub judice*.  See United States v. Mattox, 166 F.3d 335 (4th Cir. 1998).  The court in that opinion addressed a firearm photo array under the due process standards set forth above.

Because of the lack of legal authority on this precise issue, and out of an abundance of caution, the court will grant the defendant's motion to suppress the identification of the firearm without prejudice to the government's right to establish at trial that the witnesses possess an independent source of knowledge for an in-court identification.  See United States v. Wade, 388 U.S. 218, 240-42 (1967); see also United States v. Clausen, 328 F.3d 708, 713 (3d Cir. 2003); United States v. Bishop, 66 F.3d 569, 572 n.2 (3d Cir. 1995); Burkett, 951 F.2d at 1448; Flenory, 619 F.2d at 304-05.

---

[4] The government does point out, perhaps correctly, that such a holding could lead to absurd results, requiring photo arrays for vehicles, clothes, or anything else tangential to the identification of a suspect.

An appropriate order will issue.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Date: June 3, 2005

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:05-CR-0085** |
| : | |
| **v.** : | **(Judge Conner)** |
| : | |
| **CLARENCE LOUIS CRUDUP** : | |

## **ORDER**

AND NOW, this 3rd day of June, 2005, upon consideration of defendant's motions (Docs. 20, 21) for a line-up and for suppression of the identification of a firearm, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for a line-up (Doc. 21) is DENIED.

2. The motion for suppression of the identification of a firearm (Doc. 20) is GRANTED without prejudice to the government's right to establish at trial a witness's independent source of knowledge for an in-court identification of the firearm.  See United States v. Wade, 388 U.S. 218, 240-42 (1967); United States v. Clausen, 328 F.3d 708, 713 (3d Cir. 2003).

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge